**Evonne Michelle RODRIQUEZ, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14-16-00579-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed May 2, 2017

judgments to reflect only the $309 assessment of fees and costs in cause number 14525258.

Joseph R. Willie, II, Houston, TX, for Appellant.

Kimberly Aperauch Stelter, Houston, TX, for State.

Panel consists of Justices Christopher, Busby, and Jewell.

## OPINION

Tracy Christopher, Justice

We consider two questions in this appeal from the renewal of an involuntary commitment order for continued inpatient mental health services: first, whether the trial court had jurisdiction to issue the order; and second, whether there is legally sufficient evidence to support the order. We conclude that the trial court had jurisdiction, but that its order is not supported by legally sufficient evidence. We reverse the trial court's order and render judgment that appellant does not continue to meet the criteria for involuntary commitment for extended inpatient mental health services.

## BACKGROUND

In 1998, appellant was found not guilty by reason of insanity in the capital murder of her infant child. Following her acquittal, the trial court issued an order involuntarily committing appellant to inpatient treatment at a mental hospital. The order was initially set to expire after a period of thirty days, but the trial court renewed it for a longer duration upon finding that appellant still required inpatient treatment. The trial court continued to renew its commitment order after additional periodic reviews.

In 2016, before the commitment order was scheduled to be reviewed again, the mental hospital recommended that appellant receive treatment on an outpatient basis. The State opposed the recommendation, and the trial court conducted a nonjury hearing to determine whether a transition to outpatient care would be appropriate. Concluding that appellant still met the criteria for involuntary commitment for continued inpatient mental health services, the trial court issued an order renewing its commitment order for a period of one year. Appellant timely appealed from that renewal order.

## JURISDICTION

■ In her first issue, appellant challenges whether the trial court had jurisdiction to renew its commitment order.

■ The test for subject-matter jurisdiction is whether the trial court has the power to enter upon an inquiry, not whether its conclusions are substantively correct. *See Diocese of Galveston–Houston v. Stone*, 892 S.W.2d 169, 174 (Tex. App.— Houston [14th Dist.] 1994, orig. proceeding). A trial court has subject-matter jurisdiction "when the nature of the case falls within the general category of cases the court is empowered, under applicable statutory and constitutional provisions, to adjudicate." *Id.*

The trial court derived its power to adjudicate the question of appellant's involuntary commitment from Former Article 46.03 of the Texas Code of Criminal Procedure.[1] By the plain language of that statute, the trial court was required to commit a person to a mental hospital if the person was found not guilty by reason of insanity in a case involving serious bodily injury to another. *See* Act effective Sept. 1, 1989, 71st Leg., R.S., ch. 393, § 9, 1989 Tex. Gen. Laws 1520, 1525 (Former Art. 46.03, § 4(d)(1)). The statute provided that "the

---

1. Former Article 46.03 was enacted in 1975. *See* Act effective June 19, 1975, 64th Leg., R.S., ch. 415, § 2, 1975 Tex. Gen. Laws 1095, 1100. The statute was amended several times since then, both before and after appellant's acquittal, until it was repealed in 2005. *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 831, §§ 1–2, 2005 Tex. Gen. Laws 2841, 2841 (repealing Former Article 46.03 and replacing it with the newly enacted Chapter 46C of the Texas Code of Criminal Procedure). In this opinion, we cite only to those provisions of Former Article 46.03 that were effective at the time of appellant's acquittal.

trial court shall retain jurisdiction over the person so acquitted." *Id.* (Former Art. 46.03, § 4(d)(1)). The statute also provided that "the court shall order that the person be returned to a mental hospital" if, upon a periodic review of its commitment order, "the court determines that the acquitted person continues to meet the criteria for involuntary commitment." *See* Act effective Aug. 29, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2645 (Former Art. 46.03, § 4(d)(5)).

The trial court issued its renewal order citing the authority given to it under Former Article 46.03. Appellant now argues that this explicit reliance on a repealed statute has the effect of negating the trial court's jurisdiction. We disagree.

The act that repealed Former Article 46.03 contained a savings clause, which provided as follows:

> The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense was committed before that date.

Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws 2841, 2853–54. Under the terms of this savings clause, Former Article 46.03 remains in effect for appellant's purposes because it was the operative law at the time of her offense. The trial court accordingly had jurisdiction to issue its renewal order pursuant to Former Article 46.03. *See Laney v. State*, 223 S.W.3d 656, 660–61 (Tex. App.—Tyler 2007, no pet.) (holding that the trial court had jurisdiction under Former Article 46.03 as applied to a person

found not guilty by reason of insanity for an offense committed before that statute's repeal).

Appellant also advances two more grounds for arguing that the trial court lacked jurisdiction: first, because the previous commitment order had already expired; and second, because the State had not filed a motion to renew it. Appellant is mistaken on both grounds.

As for the first ground, the record reveals that the trial court signed its previous commitment order on September 10, 2015, and the terms of that order provided for appellant's continued treatment for a period lasting no longer than twelve months. The trial court conducted its review hearing on July 8, 2016, three months before that period was scheduled to end. The trial court also signed its renewal order the same day as the hearing. The record does not support appellant's factual assertion that the previous commitment order had already expired.

■ As for the second ground, appellant's factual assertion is correct: the record does not reveal that the State filed a motion to renew the commitment order. But appellant's legal premise is incorrect, as a motion from the State is not a jurisdictional prerequisite to a renewal order. Under the terms of Former Article 46.03, the trial court may conduct a hearing to determine whether a person should remain in inpatient treatment "on its own motion." *See* Act effective Aug. 29, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2645 (Former Art. 46.03, § 4(d)(5)); *Harrison v. State*, 239 S.W.3d 368, 371 (Tex. App.—Beaumont 2007, no pet.).

We overrule appellant's jurisdictional challenge.

## SUFFICIENCY OF THE EVIDENCE

In her next issue, appellant argues that the State did not meet its burden of proof

to have her recommitted for inpatient care. In a separate but related issue, she argues that the evidence is legally insufficient to sustain her recommitment. Because these issues raise the same question, though with different wording, we consider them together.

The rules for renewing an involuntary commitment order are set forth in Section 574.066 of the Texas Health and Safety Code. That statute provides that "a court may not renew an order unless the court finds that the patient meets the criteria for extended mental health services prescribed by Sections 574.035(a)(1), (2), and (3)." *See* Tex. Health & Safety Code § 574.066(f).

Section 574.035(a) then provides that a court may order a person to extended inpatient mental health services if the court finds, by clear and convincing evidence, each of the following three elements:

(1) the proposed patient is a person with mental illness;

(2) as a result of that mental illness the proposed patient:

    (A) is likely to cause serious harm to the proposed patient;

    (B) is likely to cause serious harm to others; or

    (C) is:

        (i) suffering severe and abnormal mental, emotional, or physical distress;

        (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

        (iii) unable to make a rational and informed decision as to whether or not to submit to treatment; [and]

(3) the proposed patient's condition is expected to continue for more than 90 days.

*Id.* § 574.035(a)(1)–(3).

Aside from these essential findings, the Health and Safety Code imposes additional requirements, three of which are pertinent here.

First, if the trial court finds that a proposed patient meets the commitment criteria prescribed by Section 574.035(a), the trial court must specify which criterion listed in Section 574.035(a)(2) forms the basis for the decision. *Id.* § 574.035(c).

Second, to satisfy the "clear and convincing" standard, the State must produce "expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." *Id.* § 574.035(e).

Third, the trial court "may not make its findings solely from the certificates of medical examination." *Id.* § 574.035(g). The trial court's findings must be "supported by testimony taken at the hearing." *Id.*

■ The clear and convincing standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *See State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). While the proof required under this standard must weigh more heavily than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

When conducting a sufficiency analysis under the clear and convincing standard, we review all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *Id.* The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

Turning now to the proof offered at the non-jury hearing, the analysis is relatively straightforward for the first and third elements under Section 574.035(a). An expert testified that appellant has been diagnosed with schizoaffective disorder, bipolar type, and that her condition is chronic and incurable. This testimony was uncontroverted. Thus, there is legally sufficient evidence that appellant is a person with a mental illness and that her condition is expected to continue for more than 90 days. *See* Tex. Health & Safety Code § 574.035(a)(1), (3).

The analysis for the second element is more complicated. As we mentioned above, the trial court must identify which criterion formed the basis for its decision under Section 574.035(a)(2). Out of three possible criteria, the trial court identified two in its renewal order. First, the trial court found that, as a result of her mental illness, appellant was likely to cause serious harm to others. *Id.* § 574.035(a)(2)(B). Second, the trial court found that, as a result of her mental illness, appellant is suffering severe and abnormal mental, emotional, or physical distress; that she is experiencing substantial mental or physical deterioration of her ability to function independently; and that she is unable to make a rational and informed decision as to whether or not to submit to treatment. *Id.* § 574.035(a)(2)(C). The trial court did not find that, as a result of her mental illness, appellant is likely to cause serious harm to herself. *Id.* § 574.035(a)(2)(A).

Three clinical experts testified at the hearing, and none of their testimony supports the trial court's findings under the second element.

The first expert was Dr. George Howland, a staff psychiatrist at the mental hospital. Based on his review of appellant's past psychiatric history, her current psychiatric evaluation, and her current medications, Dr. Howland opined that appellant was ready to be returned to the community. Dr. Howland testified that appellant is being treated with antipsychotic medications and that she has been compliant for the last three years: she has not refused her medications; she has not broken any rules; and she has not been aggressive toward others. Noting that appellant does not exhibit any psychotic symptoms, Dr. Howland believed that appellant could be placed into outpatient care, and that she could be trusted to administer her own medications without supervision.

The second expert was Dr. Mark Moeller, a psychiatrist who evaluated appellant at the State's request. Dr. Moeller reviewed appellant's records and consulted with appellant through videoconference. He also consulted with appellant's nurse practitioner.

Dr. Moeller testified that appellant had two episodes of psychosis in 2014. The first episode was in the middle of the year, and it was characterized as "fairly mild." Dr. Moeller explained that, during this episode, appellant believed that she was ill and she desired to see her doctors.

The second episode occurred in December of 2014, and it was "a more severe episode." At that time, appellant had been taken off of an antipsychotic medication. She then became disorganized and started stripping away her clothes in front of male patients. Appellant's caretakers readjusted her medication, and her symptoms went into remission.

Dr. Moeller testified that appellant destabilizes dramatically when she is pregnant. Dr. Moeller referred to the capital murder of appellant's infant child. He also referred to two instances in which appellant became pregnant while she was in inpatient care. Those pregnancies occurred in 1999 and in 2004, and both pregnancies were carried to term. The first child was sent to live with appellant's family, and the second was adopted by a different family.

Dr. Moeller testified that appellant does not wish to become pregnant again, even though she is around forty years old and still of child-bearing age. Dr. Moeller also explained that appellant is receiving a contraceptive injection once every three months, and the contraception is 99% effective.

Dr. Moeller opined that appellant met the criteria to be transferred to outpatient care, assuming medical supervision and monitored treatment continued. He explained that she does not have any symptoms of psychosis. He also said that the risk of her becoming psychotic and a danger to herself declined significantly so long as she did not become pregnant.

The third expert was Karen Plunkett, appellant's nurse practitioner at the mental hospital. Plunkett testified that she has continuously monitored appellant since September of 2013. Plunkett considered appellant to be one of the most cooperative patients she has ever taken under her charge. According to Plunkett, appellant is not aggressive, she has never refused her medications, and she is "quite independent." Plunkett believes that appellant's current regimen of medications has proven to be very effective and stable. Even since appellant started receiving the contraceptive injections, Plunkett has not detected any changes or mood swings in appellant.

Plunkett also testified that appellant's family is supportive. The family has visited appellant in inpatient care, along with the child born from appellant's 1999 pregnancy. Plunkett said that there have been no problems with the family visits.

As with Dr. Howland and Dr. Moeller, Plunkett opined that appellant is ready to be transferred to outpatient care. Plunkett also signed a report finding that appellant "has reached the maximum benefit from hospitalization."

■ This evidence does not support the trial court's finding that appellant is likely to cause serious harm to others as a result of her mental illness. Not a single expert testified that appellant is aggressive, either verbally or physically. See K.E.W., 315 S.W.3d at 24 (holding that an overt act may be a verbal statement or a physical act). The only evidence of aggressive behavior in appellant's history is the capital murder that led to her involuntary commitment. That capital murder occurred more than nineteen years before the trial court's hearing. That offense is too remote to qualify as evidence of "a recent overt act or a continuing pattern of behavior," which is necessary to satisfy the clear and convincing evidence standard. See Tex.

Health & Safety Code § 574.035(e); *Harrison v. State*, 148 S.W.3d 678, 680 (Tex. App.—Beaumont 2004, no pet.) (violent behavior occurring nearly ten years before the hearing did not satisfy the clear and convincing evidence standard).

■ The evidence does not support the trial court's other finding that appellant is suffering severe mental distress and a substantial mental deterioration of her ability to function independently. The record reveals only two episodes of psychosis in appellant's recent history. In the first episode, appellant believed that she was ill and in need of medical attention. There was no other live testimony discussing the details of this episode; however, one medical report in the record indicates that the episode "was linked more to a change in medication regime than any particular trigger." Considering that Dr. Moeller described the episode as "fairly mild," and that appellant actually sought out treatment during the episode, a reasonable factfinder could not have formed a firm belief that appellant is suffering "severe" mental distress or that she is experiencing such "substantial" mental deterioration that she is unable to provide for her own needs. *See* Tex. Health & Safety Code § 574.035(a)(2)(C)(i)–(ii).

Dr. Moeller characterized the second episode of psychosis as "a more severe episode." During this second episode, appellant became anxious and agitated, and she exposed herself to others. Dr. Moeller attributed this episode to a discontinuation of appellant's antipsychotic medication. The decision to discontinue that medication was made by Plunkett, not by appellant, and once appellant exhibited the psychotic symptoms, the medication was restarted and the symptoms abated.

This psychotic episode does not demonstrate that appellant is unable to provide for her own needs or to make an informed decision about her treatment. *Id.* § 574.035(a)(2)(C)(ii)–(iii). It merely demonstrates that appellant suffers from a mental illness and has a need for medication. Those bases are insufficient by themselves to hold appellant in a state of involuntary commitment. *See K.E.W.*, 315 S.W.3d at 26 ("Evidence of a proposed patient's mental illness, without more, does not fulfill the statutory requirement for ordering involuntary inpatient mental health services.").

The State responds that the evidence is sufficient because the record contains a "Certificate of Medical/Mental Examination" from Dr. Rahsheda Perine, a clinical psychologist, and on that certificate, a box is checked indicating that appellant is unable to administer her own medications. The trial court could not make a finding based on this aspect of Dr. Perine's certificate unless the finding was "supported by testimony taken at the hearing." *See* Tex. Health & Safety Code § 574.035(g). There was no such testimony. Dr. Perine did not appear at the hearing,[2] and there was no live testimony from any other expert that appellant could not administer her own medications.

The State also responds that the expert recommendations for outpatient care were contingent upon appellant's placement in a facility that could ensure that she adhered to her medication regime. The State then refers to evidence that the group home that was proposed for appellant is inadequate in several respects. The group home

---

**2.** Despite her notation that appellant could not administer her own medications, Dr. Perine still remarked on her certificate that appellant would "benefit from supports and services that would allow [her] to live in the least restrictive setting." And in a separate report, Dr. Perine opined that appellant should be discharged from inpatient care.

provides food and shelter, but not medical or mental health programs. The staff at the group home does not administer medications; the staff just watches residents taking their medications. Occasionally, the staff has forgotten to provide residents with their medications. The group home is also unsecured. Residents can come and go freely, and medications are kept out in the open, where anyone can access them.

We do not believe that the deficiencies of a group home provide a sufficient basis for renewing an order for a person's involuntary commitment for extended inpatient mental health services. The statutory criteria for involuntary commitment focus on the "proposed patient" and her "mental illness." *Id.* § 574.035(a). And to establish that criteria, there must evidence of "a recent overt act or pattern of behavior." *Id.* § 574.035(e). The statute does not make any mention about the fitness of a group home, and we cannot determine how the fitness of a group home would ever constitute "a recent overt act or pattern of behavior."

Nevertheless, the State argues that the deficiencies of a group home may be considered, citing this court's decision in *Campbell v. State*, 68 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 85 S.W.3d 176 (Tex. 2002). We do not read *Campbell* so broadly. In that case, we rejected a sufficiency challenge to a renewal order, citing testimony from two experts who opposed the patient's recommended release. *Id.* at 752, 759. One of the experts mentioned that an outpatient care program was inadequate, but our analysis did not depend on that testimony. *Id.* at 759. In affirming the trial court's renewal order, we cited evidence that the patient had a history of violating the mental hospital's rules, of screaming at one of his doctors, and of engaging in the same sort of behavior that led to his involuntary commitment.

*Id.* These overt acts are pertinent to the statutory criteria for involuntary commitment—and they are entirely missing in appellant's case.

We conclude that if a person does not meet the criteria for involuntary commitment, as those criteria are prescribed in Section 574.035(a), the trial court cannot make a finding to the contrary simply because inpatient care may be more reliable than outpatient care. *See Harrison v. State*, No. 09-14-00099-CV, 2014 WL 5490942, at *5 (Tex. App.—Beaumont Oct. 30, 2014, no pet.) (mem. op.) (holding that the evidence in support of a renewal order was legally insufficient, despite testimony that the patient's proposed group home was "rundown" and not a "top choice").

In sum, the record contains legally sufficient evidence to support the first and third elements of Section 574.035(a), but there is no evidence to support the second element. All of the clinical experts—including the State's—agreed that appellant should be transferred to outpatient care, and no evidence was presented of a recent overt act or pattern of behavior that would justify appellant's continued treatment in inpatient care. We therefore conclude that there is legally insufficient evidence to support the trial court's renewal order.

## CONCLUSION

We reverse the trial court's order and render judgment that appellant does not continue to meet the criteria for involuntary commitment for extended inpatient mental health services. *See Martin v. State*, No. 14-14-00730-CV, 2015 WL 5634397, at *3 (Tex. App.—Houston [14th Dist.] Sept. 24, 2015, no pet.) (mem. op.) (concluding that the appropriate appellate remedy is to reverse and render judgment when there is legally insufficient evidence to support a renewal order for involuntary commitment). Appellant is ordered re-

leased to receive court-ordered extended outpatient mental health services. *See House v. State*, 261 S.W.3d 244, 245 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (describing court's reversal of renewal order for continued inpatient mental health services as "ordering appellant released to outpatient care").[3]

3. A transfer from inpatient mental health services to outpatient mental health services was the only relief appellant requested in the trial court. The trial court has discretion to determine the appropriate regimen of medical, psychiatric, or psychological care or treatment, including the suitability of proposed outpatient facilities. *See* Act effective Aug. 29, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2644 (Former Art. 46.03, § 4(d)(4)); Tex. Health & Safety Code § 574.065; *Harrison*, 2014 WL 5490942, at *8

n.2. Under Former Article 46.03, applicable in this case, if appellant shows any signs of deterioration, the administrators at the outpatient facility should notify the administering trial court, at which time the trial court may conduct a hearing to decide whether to recommit appellant for inpatient treatment. *See* Act effective Aug. 29, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2646 (Former Art. 46.03, § 4(d)(6)); *House v. State*, 222 S.W.3d 497, 507 n.6 (Tex. App.—Houston [14th Dist.] 2007; pet. denied).