

# NUMBER 13-20-00460-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF M.W.M., AN ADULT

**On appeal from the 54th District Court
of McLennan County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina
Memorandum Opinion by Justice Benavides**

By three issues, appellant M.W.M. [1] challenges the trial court's order of recommitment to a state mental hospital. M.W.M. argues that (1) he established entitlement to outpatient treatment, (2) the evidence was factually insufficient to support the trial court's inpatient order, and (3) the trial court cannot renew an inpatient commitment order without a renewal request. We reverse and remand.

---

[1] To protect the identity of the appellant, we refer to him by aliases, as necessary. *See* TEX. R. APP. P. 9.8(b).

# I.    BACKGROUND[2]

M.W.M. was charged with unauthorized use of a vehicle on May 23, 2019, a state jail felony.[3] *See* TEX. PENAL CODE ANN. § 31.07. Following his indictment, M.W.M. filed his notice of intent to raise the affirmative defense of not guilty by reason of insanity. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.051. On February 7, 2020, following an examination by a psychiatrist, the trial court found that M.W.M. was insane at the time of the offense, found him not guilty of the offense as alleged, and ordered M.W.M. to be committed to a state hospital.

After an initial thirty-day assessment period at the state hospital, the psychiatrist treating M.W.M. recommended further hospitalization to the trial court. The trial court held a hearing on April 3, 2020 and ordered M.W.M. to be committed for a period of 181 days, pursuant to code of criminal procedure article 45C.256. *See id.* art. 46C.256. That period of commitment expired on September 30, 2020.

Prior to the expiration of M.W.M.'s inpatient commitment, representatives from the state hospital and local mental health authority filed an "Outpatient Management Plan" with the trial court. Combined with the management plan was a forensic evaluation conducted on August 20, 2020 by a treating psychologist at the state hospital. A hearing was conducted on September 17, 2020 to determine if M.W.M. should be placed in outpatient treatment. The trial court deferred its ruling, asking for the parties to gather

---

[2] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] A state jail felony has a maximum punishment range of two years imprisonment. *See* TEX. PENAL CODE ANN. § 12.35.

2

more information regarding a previous offense for which M.W.M. was on parole. On September 24, 2020, the hearing reconvened and M.W.M.'s counsel notified the trial court that M.W.M's parole was reinstated. However, the trial court decided, after reviewing the documents provided, that M.W.M was a "danger to himself or others" and recommitted M.W.M. to the state hospital for further inpatient treatment.

On September 29, 2020, the trial court held a hearing on M.W.M's motion to reconsider its ruling requiring inpatient treatment. M.W.M. presented Feroza Talukdar, M.D., a psychiatrist who examined M.W.M while he was a patient at the state hospital. Dr. Talukdar testified that M.W.M has schizoaffective disorder, bipolar type. She explained that M.W.M. took multiple medications to control his disorders, including Risperdal Consta, a biweekly injection that only a doctor or nurse could give him. Dr. Talukdar stated M.W.M. had no substance abuse issues at the state hospital and it was a very structured environment.

Dr. Lyndsay Brooks, a psychologist at the state hospital, conducted a risk assessment on M.W.M. She explained she looked at M.W.M's past hospitalizations and risk factors in evaluating him. Dr. Brooks evaluated M.W.M. in August 2020 and believed he had gained insight into his mental health issues. For example, M.W.M. appreciated that he was at a higher risk if not stable on his medications, was aware that stopping his medication cause "issues," and had personally requested the Risperdal injections to help with his condition. Dr. Brooks stated that M.W.M.'s psychiatric symptoms had been stable for four months, he was medication compliant, he had significant social support, and she felt a safe discharge plan had been developed. She stated that M.W.M. was able to voice

3

possible alternatives if any problems arose in his outpatient treatment and she felt that if he remained compliant with the outpatient treatment plan, there was a low risk of M.W.M. becoming violent. Dr. Brooks agreed that if factors changed such as M.W.M becoming homeless, not being medicine compliant, or abusing drugs, then the level of risk would increase and there was no way the doctors could predict the future.

Kaylee Crawford, a social worker for the state hospital, also testified. Crawford stated that M.W.M. attended the required programs while in inpatient treatment and volunteered to lead a substance abuse class as his treatment progressed. Crawford was the individual who collected the documents to send to the trial court for updates, and she stated there were no renewal documents filed, she did not know of a renewal plan to send M.W.M. back to the state hospital, and none of the documents she reviewed indicated a need for inpatient hospitalization. Crawford explained that in order for M.W.M. to be returned back to inpatient treatment, he would need another evaluation conducted by the local mental health authority to assess his risk level and determine if he was a candidate for inpatient treatment.

The trial court declined to change its ruling and recommitted M.W.M. to inpatient treatment at a state hospital facility for a period of 180 days. This appeal followed.

## II.    CONTINUING COMMITMENT TO STATE MENTAL HEALTH FACILITY

By his three issues, M.W.M. challenges his re-commitment to a state mental health facility. He argues he established entitlement to outpatient treatment, the evidence was factually insufficient to support the trial court's inpatient recommitment order, and the trial court could not renew inpatient commitment without the proper documentation from the

state hospital.

**A.      Standard of Review**

Commitment proceedings concerning persons who have been found not guilty by reason of insanity are civil in nature. *Campbell v. State*, 85 S.W.3d 176, 180 (Tex. 2002). When the burden of proof is heightened to a clear and convincing standard, as is the case for commitment proceedings following a finding of not guilty by reason of insanity, the sufficiency of the evidence standards of review are also heightened. *Truong v. State*, 574 S.W.3d 511, 519 (Tex. App.—Houston [1st Dist.] 2019, no pet.). In conducting a factual sufficiency review, the reviewing court gives due consideration to evidence that the factfinder reasonably could have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). The ultimate inquiry is whether a reasonable factfinder could have resolved disputed evidence in favor of the finding. *Id.* The reviewing court must avoid supplanting its own judgment in place of the factfinder's judgment. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006); *House v. State*, 261 S.W.3d 244, 247 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

**B.      Applicable Law**

Texas Code of Criminal Procedure Chapter 46C governs the raising of the insanity defense, the determination of a defendant's sanity, and the disposition of a defendant after a finding of not guilty by reason of insanity. *See* TEX. CODE CRIM. PROC. ANN. art. 46C. If a defendant is found not guilty by reason of insanity ("an acquitted person"), the trial court shall determine whether the charged offense involved conduct that (1) caused serious bodily injury to another person, (2) placed another person in imminent danger of

serious bodily injury, or (3) consisted of a threat of serious bodily injury to another person through the use of a deadly weapon. *Id.* art. 46C.157; *Truong*, 574 S.W.3d at 519–20. If the court determines that the offense involved conduct that caused serious bodily injury to another person, the court retains jurisdiction over the acquitted person until either the court discharges the person and terminates its jurisdiction or the cumulative total period of institutionalization and outpatient or community-based treatment and supervision equals the maximum term provided by law for the offense of which the person was acquitted by reason of insanity. TEX. CODE CRIM. PROC. ANN. art. 46C.158.

In situations in which the court makes a finding that the offense involved dangerous conduct, the court shall order the acquitted person to be committed for a period not to exceed thirty days in order to evaluate the person's present mental condition and to determine the "proper disposition of the acquitted person," such as whether inpatient treatment is necessary or whether outpatient treatment is appropriate. *Id.* art. 46C.251(a), (d). The trial court must hold a disposition hearing within thirty days of acquittal. *Id.* art. 46C.251(d). At the hearing, the court must address (1) whether the acquitted person has a severe mental illness or mental retardation; (2) whether as a result of any mental illness or mental retardation the person is likely to cause serious harm to another; and (3) whether appropriate treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and supervision. *Id.* art. 46C.253(b).

The trial court shall order the acquitted person committed to a mental hospital for inpatient treatment or residential care if the State establishes by clear and convincing evidence that:

6

(1) the person has a severe mental illness or mental retardation;

(2) the person, as a result of that mental illness or mental retardation, is likely to cause serious bodily injury to another if the person is not provided with treatment and supervision; and

(3) inpatient treatment or residential care is necessary to protect the safety of others.

*Id.* art. 46C.256(a). In determining whether the State has proved that inpatient treatment is necessary, the court shall consider whether the evidence shows both that (1) an adequate regimen of outpatient or community-based treatment will be available to the acquitted person; and (2) the person will follow that regimen. *Id.* art. 46C.256(b). An order for commitment to inpatient treatment expires on the 181st day after the date the order is issued, but it is subject to renewal as provided by statute. *Id.* art. 46C.256(c).

A trial court that orders an acquitted person committed to inpatient treatment shall determine on an annual basis whether to renew the order. *Id.* art. 46C.261(a). At least thirty days before the order is scheduled to expire, the institution to which the acquitted person is committed or the State may request that the commitment order be renewed. *Id.* art. 46C.261(b). The request must explain in detail why renewal is being requested and why outpatient or community-based treatment and supervision is not appropriate. *Id.* The court "shall renew the order only if the court finds that the party who requested the renewal has established by clear and convincing evidence that continued mandatory supervision and treatment are appropriate." *Id.* art. 46C.261(h). The court may modify the order to provide for outpatient treatment "if the court finds the acquitted person has established by a preponderance of the evidence that treatment and supervision can be safely and effectively provided as outpatient or community-based treatment and

7

supervision." *Id.* art. 46C.261(i). A renewed order authorizes inpatient or outpatient treatment for not more than one year. *Id.* art. 46C.261(h).

The trial court may order an acquitted person to participate in outpatient treatment on renewal of a commitment order under article 46C.261. *Id.* art. 46C.263(a). The court may order the acquitted person to participate in outpatient treatment only if (1) the court receives and approves an outpatient treatment plan that comprehensively provides for the outpatient treatment and supervision, and (2) the court finds that the outpatient treatment provided for by the plan will be available and provided to the acquitted person. *Id.* art. 46C.263(b). If the trial court signs an order requiring the acquitted person to participate in outpatient treatment, the order "must identify the person responsible for administering an ordered regimen of outpatient or community-based treatment and supervision." *Id.* art. 46C.263(f). "In determining whether an acquitted person should be ordered to receive outpatient or community-based treatment and supervision rather than inpatient care or residential treatment, the court shall have as its primary concern the protection of society." *Id.* art. 46C.263(g). An acquitted person may appeal from an order renewing inpatient commitment entered under article 46C.261. *Id.* art. 46C.270(b)(3).

**C.    Discussion**

In order to determine whether inpatient treatment is "appropriate" in the context of renewing an inpatient commitment order, the trial court must necessarily consider whether the acquitted person continues to meet the requirements for inpatient treatment as set out in articles 46C.253 and 46C.256. The trial court's findings stated:

The Court hereby FINDS, from clear and convincing evidence, that:

(1) the acquitted person has a severe mental illness or, as a result of that mental illness, the acquitted person is likely to cause serious bodily injury or serious harm to another if the acquitted person is not provided treatment and supervision;

(2) the appropriate treatment and supervision for the acquitted person's mental illness cannot be safely or effectively provided as outpatient or community-based treatment and supervision; and

(3) inpatient treatment or residential care is necessary to protect the safety of others.

The Court further FINDS:

(1) Continued mandatory supervision and treatment are appropriate;

(2) The defense counsel, has not established by a preponderance of the evidence that care and treatment can be effectively provided through out-patient and community-based supervision;

The Court further FINDS:

(1) That modifying to outpatient would not comport to the best interest of society.

All of the evidence presented to the trial court in M.W.M's case supported a release into outpatient treatment. The State did not request recommitment and presented no witnesses and no evidence to support a request for recommitment.[4] All of the testimony and evidence presented showed that although M.W.M. did have prior criminal history, the progress he made while committed at the state hospital was positive and his witnesses all testified as much. Also submitted to the trial court was the Texas Health and Human Services outpatient management plan for M.W.M., which established that the Heart of Texas Mental Health and Mental Retardation (the local mental health authority) would arrange for a psychiatric assessment with its psychiatrist within ten days of discharge

---

[4] The State did not submit a brief to assist the Court with the disposition of this case.

from the state hospital. The local mental health authority also previously determined that it would be able to follow M.W.M's scheduled medicine monitoring and treatment plan and would notify the trial court to any changes that would be required. The management plan also stated that M.W.M. would be seen "at least monthly" by the psychiatrist. The plan also had in place a qualified mental health professional which would be assigned to M.W.M. to help with any services he needed, including at the least bi-weekly appointments. M.W.M. would also receive housing assistance through the Heart of Texas Supportive Rental Assistance program for at least one year, as well as be set up for social security disability assistance. The management plan required M.W.M. to submit to random drug and alcohol testing due to his past history and attend alcohol and drug meetings weekly. If there were any changes to M.W.M.'s situation, the plan stated that a risk assessment would be conducted and if needed, the trial court and District Attorney's Office would be immediately notified.

No evidence was presented that supported the trial court's determination that M.W.M.'s mental illness could not be treated on an outpatient basis. According to the testimony, M.W.M. was compliant during his hospitalization with all requests and medication, he willingly participated in the services offered to him and even volunteered to lead a substance abuse class that required him to share his experiences, became self-aware of his illness and its triggers, and could verbalize alternative scenarios if necessary if released to outpatient case. The only evidence presented of any continuing "threat" to society was that each doctor testified that they could not "predict" the future; if M.W.M. did not comply with the medication requirements and returned to drug and alcohol abuse,

then his risk level would be elevated.

However, a future possible risk does not rise to a clear and convincing standard as required in commitment cases. *See In re J.F.C.,* 96 S.W.3d at 266. The State brought forward no evidence, other than historical, to show that M.W.M.'s outpatient treatment plan would be ineffective at keeping the community safe. The trial court "cannot make a finding to the contrary simply because inpatient care may be more reliable than outpatient care." *Rodriquez v. State*, 525 S.W.3d 734, 743 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The trial court did not have sufficient evidence to recommit M.W.M. to inpatient treatment based on the evidence presented. We sustain M.W.M.'s second issue.[5]

### III. CONCLUSION

We reverse the trial court's commitment order and remand to the trial court for proceedings consistent with this memorandum opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
25th day of February, 2021.

---

[5] Because M.W.M.'s second issue is dispositive, we need not address his remaining issues. *See* TEX. R. APP. P. 47.1.