**Affirm and Opinion Filed May 6, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01028-CV**

**IN THE BEST INTEREST AND PROTECTION OF C.C.C.**

**On Appeal from the 354th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 32861CR**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Osborne

This is an appeal of a commitment order extending inpatient mental health services for appellant C.C.C. In a single issue, appellant challenges the legal sufficiency of the evidence to support the trial court's order. Because the evidence was sufficient to meet the applicable statutory standards, we affirm.

### BACKGROUND

Appellant was indicted for murder on July 26, 2019. The trial court granted appellant's request for a competency evaluation, and the parties subsequently entered into an agreed judgment of incompetency and commitment to a mental health facility. The agreed judgment ordered appellant to be committed to an appropriate facility "for further examination and treatment toward the specific

objective of the Defendant attaining competency to stand trial." *See* TEX. CODE CRIM. PROC. art. 46B.073 (commitment for restoration to competency).

This appeal arises from a November 18, 2021 order following a hearing in the trial court to determine whether appellant's incompetency commitment should be continued. The court heard testimony from psychiatrists Dr. Feroz Yaquoob and Dr. Kevin Brown as well as testimony from appellant. The trial court also admitted each doctor's "Physician's Certificate of Medical Examination for Mental Illness" into evidence. We discuss the substance of the witnesses' testimony in the analysis below.

After the hearing, the trial court signed a judgment extending appellant's in-patient mental health services. The trial court found, among other matters, that:

> The Patient is likely to cause serious harm to others; [and]

> The Patient will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of his ability to function independently which is exhibited by [his] inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health or safety; and is unable to make a rational and informed decision as to whether or not to submit to treatment.

The trial court ordered that appellant "is hereby committed for Court-Ordered Mental Health Services to North Texas State Hospital–Vernon Campus for a period of time not to exceed 12 months." This appeal followed.

## ISSUE AND STANDARD OF REVIEW

In one issue, appellant challenges the legal sufficiency of the evidence to support the trial court's ruling. Specifically, he challenges the legal sufficiency of the evidence to support the trial court's findings that (1) he is likely to cause serious harm to others and (2) he is experiencing substantial mental and physical deterioration of his ability to function independently, exhibited by his inability to provide for his basic needs, including food, clothing, health, or safety.

The State bore the burden of establishing by clear and convincing evidence the statutory requisites for the extended commitment order. *See* TEX. CODE CRIM. PROC. art. 46B.102(b); TEX. HEALTH & SAFETY CODE § 574.035; *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). Because of the State's higher burden of proof, we apply a heightened review standard for sufficiency. *See State ex rel. J.W.*, 312 S.W.3d 301, 305 (Tex. App.—Dallas 2010, no pet.).

In reviewing legal sufficiency, we determine whether the evidence would allow a factfinder to reasonably form a firm belief or conviction regarding the truth of the allegations sought to be established. *Rodriquez v. State*, 525 S.W.3d 734, 739–40 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Matter of A.D.*, No. 02-19-00380-CV, 2019 WL 7494970, at *5 (Tex. App.—Fort Worth Jan. 7, 2019, no pet.) (mem. op.) ("Clear and convincing is not unequivocal or undisputed evidence; it is that measure or degree of proof that will lead to a firm belief or conviction as to the truth of the allegations."). We look at all of the admitted evidence

–3–

in the light most favorable to the finding, indulging every reasonable inference in favor of the finding, and assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* at \*4; *Weller v. State*, 184 S.W.3d 787, 789 (Tex. App.—Beaumont 2006, no pet.). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Matter of A.D.*, 2019 WL 7494970, at \*5.

## APPLICABLE LAW

Health and safety code section 574.035(a), applicable here under code of criminal procedure article 46B.102(b),[1] provides that a court may order extended inpatient mental health services only if it finds by clear and convincing evidence that:

(1) the proposed patient is a person with mental illness;

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to the proposed patient;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

---

[1] Article 46B.102(b) provides that "[p]roceedings for commitment of the defendant to court-ordered mental health services are governed by Subtitle C, Title 7, Health and Safety Code, to the extent that Subtitle C applies and does not conflict with this chapter . . . ." TEX. CODE CRIM. PROC. art. 46B.102(b). Subtitle C, Title 7 of the Health and Safety Code includes section 574.066 governing renewal of orders for extended mental health services. Subsection 574.066(f) provides that "[a] court may not renew an order unless the court finds that the patient meets the criteria for extended mental health services prescribed by Sections 574.035(a)(1), (2), and (3)." TEX. HEALTH & SAFETY CODE § 574.066(f).

–4–

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment; [and]

(3) the proposed patient's condition is expected to continue for more than 90 days . . . .

TEX. HEALTH & SAFETY CODE § 574.035(a)(1)–(3). If the court finds that the proposed patient meets subsection (a)'s criteria, the court must specify which criterion forms the basis for the decision. *Id.* § 574.035(c). Subsection (e) further provides:

(e) To be clear and convincing under Subsection (a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

(1) the likelihood of serious harm to the proposed patient or others; or

(2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

*Id.* § 574.035(e).

We will affirm the trial court's commitment order if there is legally and factually sufficient evidence supporting any finding under section 574.035(a). *See L.S. v. State*, 867 S.W.2d 838, 841 (Tex. App.—Austin 1993, no writ) (only one statutory criterion must be met under § 574.035(a)(2)).

**DISCUSSION**

We first consider appellant's challenge to the trial court's finding under section 574.035(a)(2)(C) that appellant is suffering severe mental distress and a substantial mental deterioration of his ability to function independently. He contends the medical experts presented only "conclusory evidence" that he is diagnosed with schizophrenia and does not recognize or understand the reasons for his hospitalization. We disagree.

Both Dr. Yaquoob and Dr. Brown testified about the basis for their diagnoses and conclusions. Each doctor testified that he performed a medical examination of appellant in October 2021. Both doctors testified that appellant's current diagnosis is schizophrenia, and both recommended an extension of appellant's inpatient treatment.

Dr. Brown testified that appellant's diagnosis of schizophrenia is consistent with his own observations and examinations of appellant. Appellant "manifested delusional belief, which is criteria for schizophrenia." Dr. Brown explained that appellant "told me he had a ring in his throat that might be able to lead somebody to control his mind," "clearly a delusional belief." Appellant also "appeared to manifest disorganized thought, which is a criteria of schizophrenia." In the examination, appellant "would lose his train of thought very easily," at times pausing for very long periods of time before answering a question. Dr. Brown also described appellant's "functional decline," another criteria of schizophrenia.

Dr. Brown found that appellant was suffering from severe and abnormal mental, emotional, or physical distress, and "did not appear to be able to function independently outside of an institutional setting." He had trouble answering "even basic questions," and "tended to revert to his delusional belief about this ring in his throat that was controlling him or leading other people to control him."

Dr. Brown testified that Appellant did not have the ability to consult with his lawyer with a reasonable degree of rational understanding, because he "doesn't appear to be able to hold a reasonable conversation and understand . . . the information being provided to him." In his written report that was admitted into evidence as State's Exhibit 2, Dr. Brown made similar observations. He noted that appellant "[d]oes not appear to recognize that he has a mental illness or why he would need to take medication for this." Dr. Brown concluded his testimony by recommending that appellant be recommitted for further psychiatric treatment for up to twelve more months.

Dr. Yaquoob evaluated appellant in October 2021 to assess appellant's need for further in-patient mental health services "in order to regain his competency and also for us to treat his mental illness." He explained that during the evaluation, appellant "appeared to be pretty much confused" regarding both the reason he was in the hospital and the charges against him. Appellant's "thought process was disorganized" and he was unable to understand the pleas he might make to the

charges or "the degree of felony he was facing." He testified that appellant denies he has a mental illness and denies the need for medication to treat any mental illness.

Dr. Yaquoob also explained that appellant "had delusions related to some throat ring that was going on," but was not able to explain "what he really meant by that." Dr. Yaquoob testified that "it seemed that he had some issues with paranoia like somebody controlling his mind." Appellant seemed to think that the hospital had charged him with murder and was holding him there. At times, appellant's speech did not make sense. Appellant also did not appear to understand that he had a mental illness or that he needed to take medications to treat it. Dr. Yaquoob explained that appellant "has had very poor compliance" during his hospital stay. Recently appellant had "been off and on refusing" to see his treatment team, and had refused other tests.

Dr. Yaquoob testified that appellant presented a risk to others. If he was released from the hospital, appellant was unlikely to continue to take his medications and was likely to deteriorate. *See In re T.J.H.*, No. 2-10-149-CV, 2010 WL 3433049, at \*8 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op.) (per curiam) (doctor's testimony that appellant would continue to deteriorate without treatment and evidence of appellant's refusal to take medications supported finding of deteriorating ability to function independently). Further, appellant "has a pending charge of murder that's still there." *See Weller*, 184 S.W.3d at 791–92 (expert testimony that appellant continued to suffer from mental illness that resulted in

–8–

murders, refused to take medication, and did not believe he was mentally ill "tended to confirm" likelihood of harm to appellant and others).

Dr. Yaquoob also explained that in his opinion, appellant did not currently have the ability to consult with his lawyer about the charges against him or the consequences of any plea. Appellant is delusional due to his illness. Dr. Yaquoob recommended that appellant remain at the hospital for inpatient treatment "so that we can have him on the right medications," help him with his paranoia and delusions, and "help him regain his competency, so that he can return to court and face his charges."

Dr. Yaquoob's written report of his findings, admitted into evidence as State's Exhibit 1, also reflects Dr. Yaquoob's conclusion that appellant is suffering severe mental distress and a substantial mental deterioration of his ability to function independently. He noted appellant's "delusions of mind reading and control" and appellant's mention of a "throat ring." He also noted appellant's denial of any mental illness and appellant's statement that he did not know why he was in the hospital.

Appellant's own trial testimony that he does not need medication because he does not have schizophrenia is consistent with the doctors' conclusions that appellant does not understand that he is ill. *See Holliman v. State*, 762 S.W.2d 656, 658 (Tex. App.—Texarkana 1988, no writ) (citing doctor's testimony that appellant "denied having any problems or wanting to take any medication" as supporting conclusion that appellant was not capable of making rational and informed decisions

about treatment). The record also reflects that appellant interrupted the doctors' testimony and the trial court's explanation of its rulings with his own commentary, despite the trial court's instructions and admonishments.

Reviewing all of the evidence in the light most favorable to the trial court's finding, we conclude that a factfinder could reasonably form a firm belief or conviction that appellant is suffering severe mental distress and a substantial mental deterioration of his ability to function independently. *See* TEX. HEALTH & SAFETY CODE § 574.035(a)(2)(C)(i), (ii); *see also Matter of A.D.*, 2019 WL 7494970, at *5 (trial court as fact finder was entitled to credit doctor's testimony over appellant's "and to weigh the evidence in light of those credibility choices"). Consequently, we decide this portion of appellant's issue against him.

We next consider appellant's arguments that the evidence is legally insufficient to satisfy subsection 574.035(e)'s requirements. *See* TEX. HEALTH & SAFETY CODE § 574.035(e) (standard for clear and convincing evidence under subsection (a)). Appellant contends there is no evidence to support the trial court's finding that he is likely to cause serious harm to others as a result of his mental illness. He asserts that the only evidence of aggressive behavior in his history is "the alleged murder that led to his involuntary commitment." He argues that the alleged murder took place more than two years prior to the November 2021 hearing and is "too remote to qualify as evidence of 'a recent overt act or a continuing pattern of behavior,' which is necessary to satisfy the clear and convincing evidence standard."

He cites *K.E.W.* and *Rodriquez* in support of his arguments. *See K.E.W.*, 315 S.W.3d at 24; *Rodriquez*, 525 S.W.3d at 742.

In *K.E.W.*, the court discussed the "overt act" language[2] and "agree[d] with the State" that "the statute does not require evidence of an act that either is actually harmful itself or that demonstrates harm to others is imminent." *K.E.W.*, 315 S.W.3d at 21. "The overt act itself need not be of such character that it alone would support a finding of probable serious harm to others." *Id.* at 24.

Further, "a proposed patient's words are overt acts" within the statute's meaning. *Id.* at 22. The court concluded, "[i]n sum, the statute requires evidence of a recent act by the proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm to others is probable if the person is not treated." *K.E.W.*, 315 S.W.3d at 24. The court explained that although "evidence of a proposed patient's mental illness, without more, does not fulfill the statutory requirement for ordering involuntary inpatient mental health services," K.E.W.'s verbal statements fell "within the kinds of overt conduct the statute's language makes clear the Legislature considered relevant to a commitment determination." *Id.* at 26; *see also Matter of J.H.N.*, No. 11-18-00043-CV, 2019 WL 962595, at *4 (Tex. App.—Eastland Feb. 28, 2019, no pet.) (mem. op.) (although evidence did not reveal recent overt act, trial court's renewal order

---

[2] Although the court in *K.E.W.* construed language from section 574.034 rather than section 574.035, the operative language at issue is the same. *Compare* TEX. HEALTH & SAFETY CODE § 574.034(d) *with* TEX. HEALTH & SAFETY CODE § 574.035(e).

would be affirmed where evidence, including appellant's medical history and doctors' testimony, indicated continuing pattern of behavior under § 574.035(e)).

Similarly here, the experts described appellant's denials of illness, denials of the need for medication, poor compliance with treatment, continuing "paranoia and delusions," and the pending murder charge in support of their conclusion that appellant should remain in the hospital. The doctors' evaluations were recent—made one month before trial—and supported the trial court's findings and conclusions that appellant's acts or continuing behavior pattern tended to confirm the likelihood of serious harm to himself or others and his "distress and the deterioration of [his] ability to function." TEX. HEALTH & SAFETY CODE § 574.035(e); *see K.E.W.*, 315 S.W.3d at 24.

In *Rodriquez*, the court held there was insufficient evidence that the patient was likely to cause serious harm to others as a result of her mental illness. *Rodriquez*, 525 S.W.3d at 741. But the facts in that case—that appellant had not exhibited any aggressive behavior in the nineteen years since the offense for which she was found not guilty by reason of insanity, was compliant in taking her prescribed medications, was able to provide for her own needs, and was able to make informed decisions about her treatment—stand in contrast to the evidence here. *Cf. id.* at 741–42.

Reviewing all of the evidence in the light most favorable to the trial court's finding, we conclude that a factfinder could reasonably form a firm belief or conviction that appellant's recent statements and continuing behavior tend to

confirm his distress, the deterioration of his ability to function, and the likelihood that he will cause serious harm to others. *See* TEX. HEALTH & SAFETY CODE § 574.035(e). We decide the remainder of appellant's sole issue against him.

### CONCLUSION

The trial court's judgment is affirmed.

211028f.p05

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE BEST INTEREST AND
PROTECTION OF C.C.C.

No. 05-21-01028-CV

On Appeal from the 354th Judicial
District Court, Hunt County, Texas
Trial Court Cause No. 32861CR.
Opinion delivered by Justice
Osborne. Justices Schenck and
Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of May, 2022.