Patrick **HOLLIMAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 9657.

Court of Appeals of Texas,
Texarkana.

Nov. 15, 1988.

James C. Erickson, Bryan, for appellant.

James M. Kuboviak, Co. Atty., Bryan, for appellee.

GRANT, Justice.

█ Patrick Holliman appeals from a judgment involuntarily committing him to Austin State Hospital for a period not to exceed ninety days.[1]  Tex.Rev.Civ.Stat. Ann. art. 5547–50 (Vernon Supp.1988).  The trial court, sitting without a jury, based its order upon the finding that Holliman "will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of the ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment."  The Mental Health Code provides three alternative means by which an individual may be involuntarily committed.  Tex.Rev.Civ.Stat.Ann. art. 5547–50(b), (c) provides:

> (b) Upon the hearing, the judge or the jury, if one has been requested, shall determine that the person required court-ordered mental health services only if it finds, on the basis of clear and convincing evidence, that:

(1) the person is mentally ill;  and

(2) as a result of that mental illness[2] the person meets at least one of the following additional criteria:

(i) is likely to cause serious harm to himself;  or

(ii) is likely to cause serious harm to others;  or

(iii) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.  If the judge or jury finds that the proposed patient meets at least one of these criteria, the judge or jury shall specify which of the three alternative criteria formed the basis of that decision.

(c) The clear and convincing evidence must include expert testimony and, unless waived, evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to the person or others or the person's distress and deterioration of ability to function.

In his sole point of error, Holliman contends there was insufficient evidence of either an overt act or of a continuing pattern of behavior indicating a likelihood that he would harm himself or others or continue to suffer distress and deterioration of his ability to function.

█ In reviewing this nonjury case in which there is a complete statement of facts, but no findings of facts or conclusions of law are filed, this Court will affirm the judgment if it can be sustained on any lawful theory finding support in the pleadings and evidence.  *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977).  An insufficient evi-

---

1. The trial court entered the judgment for court-ordered temporary inpatient mental health services on July 15, 1988.  Although the ninety-day commitment may have run, this appeal is not barred by the doctrine of mootness.  *Lodge v. State*, 597 S.W.2d 773, 774–76 (Tex.Civ.App.–San Antonio), *aff'd*, 608 S.W.2d 910 (Tex.1980).

2. The Code defines "mental illness" as an illness, disease, or condition which either: (A) substantially impairs the person's thought, perception of reality, emotional process, or judgment; or (B) grossly impairs behavior as manifested by recent disturbed behavior.
Tex.Rev.Civ.Stat.Ann. art. 5547–4(8) (Vernon Supp.1988).

dence point requires the Court to consider and weigh all of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ The Texas Constitution and the Mental Health Code require a medical and a legal determination of the grounds on which a person is to be deprived of his liberty. *Moss v. State,* 539 S.W.2d 936 (Tex.Civ.App.–Dallas 1976, no writ); Tex. Const. art. I, § 15–a. Expert medical opinion alone is not adequate: there must also be factual data supporting the medical opinion. *In re State for Mayberry,* 685 S.W.2d 121 (Tex.App.–Amarillo 1985, no writ); *Dial v. State,* 658 S.W.2d 823 (Tex. App.–Austin 1983, no writ); *Lodge v. State,* 597 S.W.2d 773 (Tex.Civ.App.–San Antonio), *aff'd,* 608 S.W.2d 910 (Tex.1980); *Moss v. State, supra.*

■ Lilla Holliman, Patrick Holliman's mother, testified that Patrick had been living by himself for the last two months and that he had been able to pay his rent, feed himself, and clothe himself. According to Mrs. Holliman, Patrick had never hurt anyone. She further testified that his condition appeared to improve with the medication but that, based upon his lack of success with prior hospitalizations, she was unsure if hospitalization would benefit him. She testified that she was unable to supervise the administration of Holliman's medications and that he had become hostile when she had attempted to administer them.

Patrick Holliman testified that his nerve damage was a result of injuries he received when he was beaten by California police in 1984, that he did not want to be hospitalized, that he was capable of making decisions, and that he had been taking care of himself.

Dr. Mohan Das, a psychiatrist, testified that he had observed Holliman laughing and talking to himself and that Holliman was withdrawn, agitated, and restless. Das further testified that Holliman had been pacing, screaming at hospital personnel, saying his food was being poisoned, and interacting very little with other patients. Holliman had said that voices had told him to hurt himself or others. Based upon this information, Das concluded that there was a possibility that Holliman would retaliate or be aggressive. Das further testified that, although he had no personal knowledge of Holliman's ability to function outside of an institutional environment, he had been told that Holliman had been evicted from his apartment, that he had documents indicating that Holliman had been hospitalized on numerous occasions, and that he did not believe that Holliman was capable of taking care of himself.

Dr. Das had been Holliman's attending physician for two weeks, the time period of Holliman's emergency committment pending the hearing, and had seen him every weekday for periods of ten minutes to one hour daily. He diagnosed Holliman as suffering from schizophrenia and opined that he was likely to cause harm to himself. Dr. Das' prognosis was, "I believe he is going to deteriorate, probably get worse in his behavior. Based on his past behavior, he could probably not be able to take care of himself. . . ." Das testified that Holliman had not been able to function independently all that well before he went to the hospital and that he had deteriorated somewhat since then. Das further testified that he did not believe that Holliman was capable of making a rational and informed decision as to whether or not to submit to treatment because Holliman denied having any problems or wanting to take any medication.

We find there is sufficient clear and convincing evidence to meet the statutory requirements that there be expert testimony and sufficient evidence of a continuing pattern of behavior tending to confirm Holliman's distress and deterioration of ability to function. The evidence further establishes that Holliman, if not treated, will continue to suffer abnormal mental distress, will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether to submit to

treatment.[3]

The judgment of the trial court is affirmed.

---

**3.** The statutory requirements are disjunctive; thus, the finding of the alternative elements set forth in Article 5547–50(c) are not necessary. Tex.Rev.Civ.Stat.Ann. art. 5547–50(c) (Vernon Supp.1988).