**AFFIRMED and Opinion Filed February 8, 2023**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-01224-CV**

**IN THE BEST INTEREST AND PROTECTION OF C.C.**

**On Appeal from the 354th Judicial District Court**
**Hunt County, Texas**
**Trial Court Cause No. 32861CR**

**MEMORANDUM OPINION**
Before Justices Molberg, Carlyle, and Garcia
Opinion by Justice Carlyle

This is an appeal of a commitment order extending inpatient mental health services for appellant C.C. Appellant challenges the legal sufficiency of the evidence to support the trial court's order. Because the evidence is sufficient to meet the applicable statutory standards, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

Appellant was indicted for murder on July 26, 2019. The trial court granted appellant's request for a competency evaluation and the parties subsequently signed an agreed judgment of incompetency and commitment to a mental health facility.

The agreed judgment ordered appellant to be committed to an appropriate facility "for further examination and treatment toward the specific objective of the Defendant attaining competency to stand trial." *See* TEX. CODE CRIM. PROC. art. 46B.073 (commitment for restoration to competency).

In November 2021, the trial court held a "recommitment hearing" and signed a judgment extending appellant's commitment for inpatient mental health services for a period not to exceed twelve months. This Court affirmed the trial court's November 2021 judgment. *See In re C.C.C.*, No. 05-21-01028-CV, 2022 WL 1438939, at *4–5 (Tex. App.—Dallas May 6, 2022, no pet.) (mem. op.) (describing evidence of appellant's continuing delusions and paranoia, poor compliance with treatment, and denial of mental illness and need for medication).

On November 4, 2022, the trial court held another recommitment hearing. It heard testimony from psychiatrists Dr. Kevin Brown and Dr. Feroz Yaqoob as well as from appellant. The trial court also admitted into evidence certificates of medical examination completed by each doctor in October 2022.

Following that hearing, the trial court signed another judgment extending appellant's commitment for inpatient mental health services for up to twelve months. The trial court stated in its November 4, 2022 judgment that it "finds by clear and convincing evidence" that appellant is mentally ill and as a result of the mental illness (1) "is likely to cause serious harm to self," (2) "is likely to cause serious harm to others," and (3) "will, if not treated, continue to suffer severe and abnormal

mental, emotional or physical distress and is experiencing substantial mental or physical deterioration of his/her ability to function independently which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health or safety; and is unable to make a rational and informed decision as to whether or not to submit to treatment."

**Standard of review and applicable law**

The State bore the burden of establishing by clear and convincing evidence the statutory requisites for the extended commitment order. *See* TEX. CODE CRIM. PROC. art. 46B.102(b); TEX. HEALTH & SAFETY CODE § 574.035; *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). Thus, our legal sufficiency review requires us to determine whether the evidence would allow a factfinder to reasonably form a firm belief or conviction regarding the truth of the allegations sought to be established. *See State ex rel. J.W.*, 312 S.W.3d 301, 305 (Tex. App.—Dallas 2010, no pet.); *Rodriquez v. State*, 525 S.W.3d 734, 739–40 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also In re A.D.*, No. 02-19-00380-CV, 2019 WL 7494970, at *5 (Tex. App.—Fort Worth Jan. 7, 2019, no pet.) (mem. op.) ("Clear and convincing is not unequivocal or undisputed evidence; it is that measure or degree of proof that will lead to a firm belief or conviction as to the truth of the allegations."). We look at all the evidence in the light most favorable to the finding, indulging every reasonable inference in favor of the finding, and assume the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *In re A.D.*,

2019 WL 7494970, at *4; *Weller v. State*, 184 S.W.3d 787, 789 (Tex. App.—Beaumont 2006, no pet.). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *In re A.D.*, 2019 WL 7494970, at *5.

Health and safety code subsection 574.035(a), applicable here under code of criminal procedure article 46B.102(b),[1] provides that a court may order extended inpatient mental health services for up to one year if it finds by clear and convincing evidence that:

(1) the proposed patient is a person with mental illness;

(2) as a result of that mental illness the proposed patient:
   (A) is likely to cause serious harm to the proposed patient;
   (B) is likely to cause serious harm to others; or
   (C) is:
      (i) suffering severe and abnormal mental, emotional, or physical distress;
      (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
      (iii) unable to make a rational and informed decision as to whether or not to submit to treatment; [and]

(3) the proposed patient's condition is expected to continue for more than 90 days[.]

---

[1] Article 46B.102(b) provides that "[p]roceedings for commitment of the defendant to court-ordered mental health services are governed by Subtitle C, Title 7, Health and Safety Code, to the extent that Subtitle C applies and does not conflict with this chapter." TEX. CODE CRIM. PROC. art. 46B.102(b). Subtitle C, Title 7 of the health and safety code includes section 574.066 governing renewal of orders for extended mental health services. Subsection 574.066(f) provides that "[a] court may not renew an order unless the court finds that the patient meets the criteria for extended mental health services prescribed by Sections 574.035(a)(1), (2), and (3)." TEX. HEALTH & SAFETY CODE § 574.066(f).

TEX. HEALTH & SAFETY CODE § 574.035(a)(1)–(3). If the court finds that the proposed patient meets subsection (a)'s criteria, the court must specify which criterion forms the basis for the decision. *Id*. § 574.035(c).

Additionally, subsection 574.035(e) provides:

(e) To be clear and convincing under Subsection (a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:
    (1) the likelihood of serious harm to the proposed patient or others; or
    (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

We will affirm the trial court's commitment order if there is sufficient evidence supporting any finding under section 574.035(a). *See L.S. v. State*, 867 S.W.2d 838, 841 (Tex. App.—Austin 1993, no writ) (only one statutory criterion must be met under § 574.035(a)(2)).

**Analysis**

Appellant asserts the evidence is legally insufficient to support the trial court's judgment because a reasonable factfinder could not have found (1) he was experiencing severe mental distress and substantial mental or physical deterioration of his ability to function independently or (2) the threat of harm to himself or others "was substantial and based on actual dangerous behavior manifested by some overt act or threats in the recent past."[2]

---

[2] The State has not filed a brief in this appeal.

At the hearing, Dr. Brown and Dr. Yaqoob stated they each performed a medical examination of appellant in October 2022. Both doctors testified appellant's current diagnosis is schizophrenia and both recommended an extension of appellant's inpatient treatment.

Dr. Brown testified appellant "evidences" delusional beliefs and disorganized speech, which together constitute sufficient criteria "to make the diagnosis of schizophrenia." He stated appellant "continues to experience symptoms of schizophrenia," "continues to be mentally ill," and is currently "under court-ordered medications," most of which are administered by injection. According to Dr. Brown, if left untreated, appellant's condition "would deteriorate" and he would "become much more psychotic."

Based on his examination, Dr. Brown opined in his certificate that appellant "is suffering severe and abnormal mental, emotional, or physical distress," "is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for basic needs, including; food, clothing, health or safety," and "is unable to make irrational and informed decisions as to whether or not to submit to treatment." He stated appellant (1) "does not acknowledge that he has any mental illness"; (2) "specifically states" he "would not take medicines unless you guys make me"; (3) "did not understand why he was here" and kept asking to be released and "just go home"; (4) was "laughing to himself" during the

examination and "would just stop mid-sentence and not complete his thought," which indicated "thought blocking"; and (5) has a "chronic delusional belief that he has a throat ring" and "still thinks that the throat ring is creating some kind of physical, like, symptom in his throat."

As to the "significance" of the throat ring, Dr. Brown stated that when appellant was first admitted to the hospital for inpatient mental health services in August 2021,

> [H]e claimed that the throat ring was implanted in his abdomen when he was a baby, and that it somehow was emitting some kind of wifi signal transferring energy, and then worms went inside of his brain and created a worm hole. . . .
> . . . Now, in September of 2021, also during one of his treatment team meetings, he was talking about the throat ring needing to come out because it was really impairing him. And he grabbed his throat— this happened a couple of times where he, kind of violently, grabbed his throat, like, to choke himself.
> And so, again, this was before the current medications he's on. . . . So now that he's on medicines, he's not doing these kind of things.
> He is still saying the throat ring is bothering him but he hasn't tried to choke himself like he did in September of 2021. So, hopefully, that explanation provides some background into the continued danger he might impose should he not take medicines or be allowed to leave the hospital.

Dr. Brown also stated he believes appellant's condition is likely to continue for more than 90 days and appellant "may need continued psychiatric treatment for the timeframe allowed for by law."

On cross-examination, Dr. Brown stated that based on his examination, he could not "definitively say" appellant poses a danger to others and thus he did not

–7–

make a finding in his certificate that appellant was likely to cause others harm. He also stated that "when [appellant] first got here, [his] delusions were a lot worse and he was clearly acting out on the delusional beliefs as well, before he got on the current medications."

Dr. Yaqoob testified that though appellant "has improved somewhat" over the past year, he "continues to suffer from schizophrenia" and still has delusions "around his charge" and "that the throat ring thing is still there." Dr. Yaqoob stated appellant does not think he has any mental illness and does not understand why he is in the hospital. He is on court-ordered medications "due to poor compliance with treatment." Also, he still exhibits other symptoms of schizophrenia including (1) "thought blocking," which means "he's talking and then he stops" and "doesn't complete his thought," and (2) responding to "internal stimuli," which means that "it seems like he's responding to something, whether it's auditory hallucination or something going on inside."

Dr. Yaqoob testified he opined in his certificate that appellant "is likely to cause serious harm to others" and is "suffering severe and abnormal mental, emotional or physical distress," "experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety," and "unable to make a rational and informed decision as to whether or not to submit to treatment." He stated

appellant has still not been "found not manifestly dangerous" and thus remains in "a maximum security unit." When he asked appellant if he would take his medications if not compelled by a court, appellant responded "I don't really want to." Also, Dr. Yaqoob testified that appellant "brings up" the throat ring "pretty frequently" and "we haven't been able to get rid of that delusion." Dr. Yaqoob stated,

> He continues to have paranoia, delusions, his thought process is disorganized. He doesn't really acknowledge, you know, his ongoing legal situation. He still thinks about the throat ring. You know, he's very irritable, confused about his legal situation.
>
> He is on court-ordered medication. He's likely to stop taking the medications once he is—you know, if he's in a setting where those medications are not compelled. So, all of those things point towards not being able to take care of himself, basically, you know, or function independently and ongoing mental issues or psychiatric issues that interfere with his ability to function independently.

Dr. Yaqoob stated he expects appellant's "diagnosis with schizophrenia and struggles with mental health" will continue for more than ninety days. He also testified that if appellant stops taking his medications and his condition is left untreated,

> [M]ore than likely, [he] is going to get irritated from his current symptoms. So whatever we see right now is just going to deteriorate to the level where he may be grossly psychotic. Whatever he's doing right now, in terms of taking care of himself and attending his classes for a certain degree, I think that may stop happening.
>
> You know, his aggression may come back. You know, his delusions may get worse. He may start acting on those delusions going forward.
>
> So, there are different things that can happen. Again, it's—you know, it would be pretty similar to what he may have presented once he was arrested for his ongoing offense, what he's been charged with. So, those are the things that are likely to happen.

Additionally, Dr. Yaqoob stated that though commitment extension orders can be for "up to a year," the hospital "will communicate back to the Court" if a patient is "found competent" during that time, and the patient can then be released.

On cross-examination, Dr. Yaqoob testified that though appellant has said in the past that he believes the throat ring enables other people to control his behavior, he did not say this during the October 2022 examination and there is no indication he has said this to anyone recently.

Appellant testified (1) he does not believe he has schizophrenia or is a potential serious harm to others and (2) he does not believe the medications he is currently on are necessary and he would not take them "if I don't have to." He also stated that if he were "let out," he would live with family and wants to get a job as a data technician.

Appellant's first contention on appeal challenges the trial court's subsection 574.035(a)(2)(C) finding that he is suffering severe mental distress and a substantial mental deterioration of his ability to function independently. According to appellant, both experts (1) "generally presented conclusory evidence that Appellant is diagnosed with schizophrenia and does not recognize or understand the circumstance why he was in the hospital" and (2) "merely recite[d] the language of 574.035(a)(2)(C)(ii)." We disagree.

Both Dr. Brown and Dr. Yaqoob provided testimony regarding the bases for their diagnoses and conclusions. Both also testified that if appellant was released

from the hospital, he was unlikely to continue taking his medications and his condition would likely deteriorate. *See In re L.L.*, No. 05-22-00846-CV, 2022 WL 14769803, at *5 (Tex. App.—Dallas Oct. 26, 2022, no pet.) (mem. op.) (concluding doctor's testimony that appellant continued to exhibit symptoms of schizophrenia and would continue to deteriorate without treatment and evidence of appellant's refusal to take medications supported § 574.035(a)(2)(C) finding); *In re T.J.H.*, No. 2-10-149-CV, 2010 WL 3433049, at *8 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op.) (per curiam) (same). Appellant's testimony that he does not have schizophrenia and does not need his medications is consistent with the doctors' conclusions that he does not understand he is mentally ill. *See Holliman v. State*, 762 S.W.2d 656, 658 (Tex. App.—Texarkana 1988, no writ) (citing doctor's testimony that appellant "denied having any problems or wanting to take any medication" as supporting conclusion that appellant was not capable of making rational and informed decisions about treatment).

On this record, we conclude a factfinder could reasonably form a firm belief and conviction that appellant is suffering severe mental distress and a substantial mental deterioration of his ability to function independently. *See* TEX. HEALTH & SAFETY CODE § 574.035(a)(2)(C); *see also In re A.D.*, 2019 WL 7494970, at *5 (explaining trial court as factfinder was entitled to credit doctor's testimony over appellant's "and to weigh the evidence in light of those credibility choices").

–11–

Appellant's second contention challenges the legal sufficiency of the evidence regarding subsection 574.035(e)'s requirements. TEX. HEALTH & SAFETY CODE § 574.035(e). He asserts the evidence "does not support the trial court's finding that Appellant is likely to cause serious harm to his self or others as a result of his mental illness." According to appellant:

> While Dr. Brown did testify in the past C.C. had grabbed his own throat in the past, presumably to remove the throat ring, he has not done that since 2021. Yet, not a single expert, or other witness testified that appellant is aggressive, either verbally or physically since 2021. The only evidence of aggressive behavior in Appellant's history is the alleged murder that led to his involuntary commitment. The alleged murder occurred more than three and half years before the trial court's hearing. That offense is now too remote to qualify as evidence of "a recent overt act or a continuing pattern of behavior," which is necessary to satisfy the clear and convincing evidence standard.

In *K.E.W.*, our supreme court discussed the health and safety code's "overt act" language[3] and "agree[d] with the State" that "the statute does not require evidence of an act that either is actually harmful itself" or that demonstrates serious harm "is imminent." *K.E.W.*, 315 S.W.3d at 21. The overt act itself need not be of such character that it alone would support a finding of probable serious harm. *Id*. at 24.

Further, "a proposed patient's words are overt acts" within the statute's meaning. *Id*. at 22. In sum, the statute requires evidence of a recent act by the

---

[3] Though the court in *K.E.W.* construed language from health and safety code section 574.034 rather than section 574.035, the operative language at issue is the same. *See In re C.C.C.*, 2022 WL 1438939, at *5 n.2.

–12–

proposed patient, either physical or verbal, that can be objectively perceived and that is to some degree probative of a finding that serious harm is probable if the person is not treated. *Id*. at 24; *see also In re J.H.N.*, No. 11-18-00043-CV, 2019 WL 962595, at *4 (Tex. App.—Eastland Feb. 28, 2019, no pet.) (mem. op.) (affirming trial court's order extending inpatient treatment where "[a]lthough the evidence did not reveal any recent overt act that would satisfy the statutory requirements," it "did indicate a continuing pattern of behavior" under § 574.035(e)).

Here, both doctors described appellant's denials of illness, denials of the need for medication, poor compliance with treatment, and continuing paranoia and delusions in support of their conclusions that appellant should remain hospitalized. The doctors' examinations were performed less than a month before trial and thus were recent. On this record, we conclude a factfinder could reasonably form a firm belief or conviction that appellant's recent statements and continuing pattern of behavior tend to confirm his distress, the deterioration of his ability to function, and the likelihood of serious harm to himself or others. *See* TEX. HEALTH & SAFETY CODE § 574.035(e).

We affirm the trial court's judgment.

/Cory L. Carlyle/

CORY L. CARLYLE
JUSTICE

221224F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST AND
PROTECTION OF C.C.

No. 05-22-01224-CV

On Appeal from the 354th Judicial
District Court, Hunt County, Texas
Trial Court Cause No. 32861CR.
Opinion delivered by Justice Carlyle.
Justices Molberg and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 8, 2023